UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **WESTFIELD INSURANCE CO.** ) | **CASE NO.1:14CV522** |
| ) | |
| Plaintiff, ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| Vs. ) | |
| ) | |
| **FIRST CONTINENTAL SERVICES** ) | **OPINION AND ORDER** |
| **CO.** ) | |
| ) | |
| Defendant. ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff Westfield Insurance Company's and Defendant First Continental Services Company's Motions for Summary Judgment (ECF # 28 & 32 respectively). For the following reasons, the Court grants Defendant's Motion and denies Plaintiff's Motion.

**Background Facts**

This matter arises from a flash fire that occurred on June 1, 2010, in the home of Andrzej and Katarzyna Plizga in Cook County, Illinois caused by the ignition of vapors from a cement sealant. The sealant was made by The Euclid Chemical Company ("Euclid"), a subsidiary of RPM International, Inc ("RPM"). Both RPM and Euclid are Ohio based

companies.  Andrzej had purchased sealant from Henry Frerk & Sons, Inc ("Frerk").  Andrzej was applying the sealant to the cement floor in his basement when the sealant vapors were ignited by the pilot light on the Plizga's hot water heater.  The resulting flash fire severely burned Andrzej and damaged the Plizga's home.  Plaintiff Westfield Insurance Company ("Westfield") is the insurer of Frerk, the distributor of the sealant.  Defendant First Continental Services Co. ("First Continental") is the captive insurer of RPM.[1]  At the time of the Plizgas' injury, First Continental insured RPM and its subsidiaries, including Euclid, via a commercial general liability policy.  The Plizgas and their homeowner's insurer, Allstate Indemnity Co., filed suit against Frerk in Illinois, asserting product liability claims.  Frerk tendered its defense to First Continental under an Additional Insured-Vendors Endorsement in the RPM but First Continental denied coverage.  Frerk's insurer, Westfield, defended Frerk and reached a settlement with the Plizgas and the Plizga's insurer, costing Westfield a total of $135,215.48 in defense costs and $2,050,000.00 in settlement.  Westfield now seeks a declaratory judgment that it is entitled to equitable subrogation based on the coverage owed Frerk by First Continental under its Additional Insured-Vendors Endorsement.  Both Westfield and First Continental now move for summary judgment.  Both parties contend there are no genuine issues of fact.  However, the dispute involves a matter of contract interpretation, which is within the purview of the Court.

Westfield's Policy with Frerk contains the following provision:

---

[1]  Captive insurers are insurance companies established by a parent company for the purpose of insuring the parent company and, in some cases, its subsidiaries.  It may also provide insurance to customers of the parent and its subsidiaries.  See Wikipedia *Captive Insurance* https://en.wikipedia.org/wiki/Captive_insurance.

> b. Excess Insurance
> 1) This insurance is excess over:
> (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(Westfield Policy pgs. 71-72).  Under this excess insurance provision, Westfield seeks subrogation from First Continental for defense and indemnity costs Westfield incurred in defending and settling the Frerk litigation with the Plizgas.  According to Westfield, First Continental's policy provides primary coverage.

First Continental's Policy with RPM reads in pertinent part:

> We will indemnify those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the ***right but not the duty to defend*** the insured against any "suit"seeking those damages."
>
> First Continental's Policy also contains an Additional Insured- Vendors Endorsement

that reads as follows:

> WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business….

**SCHEDULE**

**Name of Person or Organization (Vendor)**: On File with Company

**Your Products**: All Products.

At issue is whether Frerk was a Vendor "On File with Company."   According to Westfield, "On File with Company" means on file with the insured company, in this case Euclid.  First Continental contends "On File with Company" means on file with First

3

Continental. According to First Continental, because Frerk was not on file as a vendor with First Continental it is not entitled to coverage as an additional insured.

**Standard of Review**

A summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must do so by either pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or by "showing that the materials cited (by the adverse party) do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." See Fed.R.Civ.P. 56(c)(I)(a), (b). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The

burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### Declaratory Judgment

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. Nevertheless, the Supreme Court has reiterated the discretionary nature of the Act. In *Public Affairs Press v. Rickover*, 369 U.S. 111, 82 S. Ct. 580, 7 L. Ed. 2d 604 (1962), the highest court opined: "'The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.' *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 499 [62 S.Ct. 1173, 1177-78, 86 L.Ed. 1620 (1942)]." Put another way, the declaratory judgment statute "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Green v. Mansour*, 474 U.S. 64 at 72 (1985).

### Westfield's Motion for Summary Judgment

According to Westfield, it is entitled to summary judgment on its claim for declaratory

judgment for coverage under the First Continental Policy with RPM because Frerk is an Additional Insured under First Continental's Vendor Endorsement. From April 1, 2010 through April 1, 2011, First Continental insured Euclid under RPM's commercial general liability policy No. 1-GLRPM-01/2010. This policy includes an Additional Insured-Vendors Endorsement. During the policy period, Frerk was an approved vendor of Euclid Products in Illinois. Although it is undisputed that Frerk was not on file as a vendor with First Continental, Westfield contends Frerk was a vendor for Euclid, selling Increte Crystal Clear VOV cement sealer, the same sealer used by Andrzej that resulted in his injuries. However, when Frerk sought coverage under the First Continental policy First Continental denied coverage because:

> We have determined that *no certificate of insurance was issued to Henry Frerk & Sons, Inc., which would allow it coverage under the aforesaid policy*.
> Since First Continental Services Co. has no indication that Henry Frerk & Sons, Inc. was on file as a vendor it must decline your request at this time, including your request for payment of all defense fees and costs.

(Hassett Ex 5 to affidavit).

Westfield argues Frerk was an Additional Insured under First Continental's policy with RPM because the policy is a blanket insurance policy and Frerk is an admitted vendor of Euclid. Westfield claims a common sense reading of "On File with Company" means RPM or its subsidiaries, not First Continental. Furthermore, a blanket policy provides automatic coverage for additional insured vendors without the need for specific notice. In fact, when First Continental received Frerk's tender of coverage, the first place they looked for documentation on Frerk was Euclid and not its own records.

Westfield further argues that neither "On File" nor "Company" are defined in the

policy but in Endorsement 2 of the policy, concerning waiver of subrogation or contribution against contractors of RPM, it refers to Person or Organization Designated in the Schedule. First Continental's policy expressly states that under Endorsement 2's Schedule  designated person or organization's were those whose certificates of insurance were on file with "First Continental Services Co."   Therefore, Westfield argues First Continental expressly referred to itself elsewhere in the policy by its name, First Continental, when it meant itself.  If it intended "Company" in the Additional Insured-Vendors Endorsement to mean "First Continental" it would have simply read  "On File with First Continental" like it did in Endorsement 2.  Also, Westfield argues, Janeen Kastner, RPM's Risk Management Vice-President sent an email to Marsh, an insurance broker for RPM, concerning a distributor who wanted to be named as an additional insured under RPM's product liability coverage.  The broker responded that the distributor would be covered under the Additional Insured-Vendors Endorsement because it is a blanket endorsement.  According to Westfield, this evidences the intent of the parties to have the Additional Insured-Vendors Endorsement provide blanket coverage for Additional Insured vendors.

**First Continental's Motion for Summary Judgment**

First Continental contends it is a captive insurer, wholly owned by RPM, for the purpose of providing captive insurance to RPM and its subsidiaries.  It is not a commercial insurer and does not offer or sell insurance policies in the commercial insurance market, nor does it issue insurance policies to third parties.

RPM is the named insured on the policy in question, which covers RPM subsidiaries, including Euclid.  Euclid maintains vendor information but does not maintain a list of its

vendors that are covered under the RPM policy for additional insured vendors.

First Continental's policy expressly disclaims any duty to defend. It also provides coverage under its Additional Insured-Vendors Endorsement for those vendors listed on file with First Continental. Therefore, it is not a blanket policy because the vendor must be on file with First Continental as a prerequisite to coverage. Both parties to the insurance contract, RPM and First Continental, agree that "company" in the additional insured vendors endorsement refers to First Continental. If a company wanted to be added as an additional insured a request to add the vendor had to be submitted to First Continental through Marsh, First Continental's captive insurance manager. If they qualified as an additional insured, March added them to the list it maintained and sent the vendor a certificate of insurance showing the vendor as an additional insured under the First Continental policy. Frerk did not have written agreement with Euclid to be an additional insured on the First Continental policy. In fact, Frerk was not on file with First Continental as an Additional Insured vendor.

First Continental contends the phrase "On File with Company" is not ambiguous and means "On File with First Continental." First Continental argues the term "Company" is singular and therefore must refer to First Continental. If it referred to RPM and its many subsidiaries it would have referred to "Companies" in the plural. There are also other indicators that "Company" means First Continental in the policy. On the first page of the Commercial General Liability Coverage Form it reads, "the words 'we' 'us' and 'our' refer to the company providing this insurance." (First Continental Policy pg FC000007). Also, in the Broad Named Insured Endorsement it reads, "This endorsement shall not be binding upon the company unless countersigned by a duly authorized representative of the company." (Id.at

FC000004).   Furthermore, First Continental points to the Knowledge of Occurrence, Notice of Occurrence, and Unintentional Omission Endorsement which states that "this provision does not apply to the right of the *company* to collect additional premium . . ." (Id. at pg FC 000033).

First Continental further contends that if the Court should find the phrase "On File with Company" ambiguous, both parties to the policy acknowledge they interpret the phrase to refer to First Continental, not RPM.

**Law and Analysis**

When a court, sitting in Ohio, must determine the rights of the parties in a contract and must determine what state law applies when the parties are diverse and the contract is silent as to the choice of law to be applied, the court applies Ohio's choice of law rules. "A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state." *Klaxon v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 496 (1941); *Security Ins. Co. v. Kevin Tucker & Assocs., Inc.,* 64 F.3d 1001, 1005 (6th Cir.1995).   "Ohio's rules regarding choice of law 'do not themselves determine the rights and liabilities of the parties, but rather guide decision as to which local law rule will be applied to determine these rights and duties.'" *Nationwide Ins. v. Phelps* 2003 WL 220418, 2 (Ohio App. 7 Dist.,2003) quoting 1 Restatement of the Law 2d, Conflict of Laws (1971) 3, Section 2, Comment a(3).  "In making this determination, the Ohio Supreme Court has adopted the Restatement of Law 2d (1971) 561, Conflict of Laws, Section 187." *Nationwide* at *2 citing *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.* (1983), 6 Ohio St.3d 436, 438.  "187 provides that, subject to very limited exceptions, the law of the state chosen by the parties to a contract will govern

their contractual rights and duties." *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 477, (Ohio 2001).  If the parties contract does not include a choice of law provision, the Ohio Supreme Court has adopted the Restatement of Law 2d (1971) 561, Conflict of Laws, Section 188. *Gries Sports Enterprises, Inc. v. Modell* (1984), 15 Ohio St.3d 284, at syllabus.  The Ohio Supreme Court applies Section 188 to insurance contract disputes. See *Nationwide Mut. Ins. Co. v. Ferrin* (1986), 21 Ohio St.3d 43, 44-45.  Thus, "application of the Restatement's contractual choice-of-law provisions to liability insurance cases is no longer a subject of dispute in Ohio." *Ohayon* at 480.

"Section 188 provides that, in the absence of an effective choice of law by the parties, their rights and duties under the contract are determined by the law of the state that, with respect to that issue, has 'the most significant relationship to the transaction and the parties.' Restatement at 575, Section 188(1). To assist in making this determination, Section 188(2)(a) through (d) more specifically provides that courts should consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Nationwide Ins.,* at *3.

> The Sixth Circuit instructed courts on the proper application of these factors:
>
> The key to our analysis is that the choice of law principles found in the **Restatement** need not be given equal weight in every circumstance, nor are they intended to be exclusive. They also are relatively elastic, and in some cases equivocal. As is stated in the Comment on subsection (2) to section 6 of the **Restatement:**
>> It is not suggested that this list of factors is exclusive. Undoubtedly, a court will on occasion give consideration to other factors in deciding a question of choice of law. Also it is not suggested that the factors mentioned are listed in the order of their relative importance. Varying weight will be given to a

> particular factor, or to a group of factors, in different areas of choice of law....
>
> At least some of the factors mentioned in this Subsection will point in different directions in all but the simplest case. Hence any rule of choice of law, like any other common law rule, represents an accommodation of conflicting values.

*International Ins. Co. v. Stonewall Ins. Co.* 86 F.3d 601, 606 (6th Cir. 1996).

Plaintiff contends that, in applying Ohio's choice of law factors, the Court must give particular weight to the principal location of the insured risk.  According to Plaintiff, this supports an application of Illinois law.  Plaintiff relies for support of this proposition on the *Ohayon* court holding.  "In insurance cases, this focus will often correspond with the Restatement's view that the rights created by an insurance contract should be determined 'by the local law of the state which the parties understood was to be the *principal location of the insured risk during the term of the policy,* unless with respect to the particular issue, some other state has a more significant relationship * * * to the transaction and the parties.' (Emphasis added.) Restatement at 610, Section 193. * * * The principal location of the insured risk described in Section 193 neatly corresponds with one of Section 188's enumerated factors- *the location of the subject matter of the contract.*" (Emphasis sic.) *Nationwide Ins. At* \* 3 citing *Ohayon* at 477-480,

However, as Defendant points out, the Sixth Circuit rejected such a rigid application. When considering these factors the Sixth Circuit instructed courts on the weight to be accorded the factors as follows: "Nor did the court endorse—as Plaintiffs suggest—an inflexible law-of-the-location-of-the-occurrence rule for insurance contracts.  Indeed, the court did quite the opposite, repeatedly emphasizing that choice of law principles are elastic

11

and that '[r]esolving a choice of law issue is not an exact science, but an art form.'" *Mill's Pride, Inc. v. Continental Ins. Co.* 300 F.3d 701, 709 ( 6th Cir. 2002) quoting *International*, 86 F.3d at 608.

In applying the facts to the Section 188 factors, the Court finds they weigh in favor of Ohio law. First, there is the issue of whether Westfield's insured was also an insured under First Continental's Policy with Euclid. It is undisputed that Frerk never bargained for, negotiated or contracted with Euclid to be an additional insured, made any payments, or performed any contractual obligation under First Continental's Policy with Euclid. There is no evidence Frerk sought coverage under the policy until after the Plizgas' accident. Thus, factors concerning the place of contracting, negotiation, and place of performance all weigh in favor of Ohio. Any contractual rights Frerk may have under First Continental's Policy with RPM were wholly dependent negotiations between RPM and First Continental and depended on either First Continental's adding them on the Schedule or Euclid maintaining them on file. Such an entirely and admittedly passive role by Frerk does not support applying Illinois law. Furthermore, the undisputed evidence demonstrates the policy was written and issued in Ohio. The *Ohayon* court found these facts alone supported application of Ohio law. *Ohayon*, 91 Ohio St. 3d at 483). Also, RPM and First Continental's expectation evidences that Ohio law applies. RPM made the premium payments in Ohio. Furthermore, First Continental is a "captive" insurance company, wholly-owned by Ohio based RPM. Thus, all these factors clearly support applying Ohio law since Ohio has the greatest interest in determining coverage.

**Is the Policy at Issue Ambiguous**

When interpreting an insurance policy under Ohio law, courts apply basic contract principles.  "An insurance policy is a contract whose interpretation is a matter of law. Contract terms are to be given their plain and ordinary meaning." *Lager v. Miller-Gonzalez* 120 Ohio St.3d 47, 49 (Ohio, 2008)(internal citations omitted).  "Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Id* at 50. Ordinarily, "if provisions are susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Id* at 49. However, "when a court decides whether a claimant is insured under a policy, ambiguities are construed in favor of the *policyholder,* not the claimant." *Westfield Ins. Co. v. Galatis* 100 Ohio St.3d 216, 224  (Ohio,2003).  "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement." *Id*. at 219. "Where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent." *Id*. at 219.

The Court finds the phrase "On File with Company" ambiguous because it is susceptible to more than one reasonable interpretation-i.e.- company may refer to the insured or the insurer.  The policy does not define the term "Company."   While elsewhere in the policy "company" refers to First Continental, in at least one other endorsement, First Continental's policy expressly reads that the names be "On file with First Continental." Furthermore, in several endorsements the language used in the schedules includes: "On File," On File with Company" and "On File with First Continental."  Thus, the policy language is not consistent nor amenable to definite determination of the parties' intent based on the plain

language.   In the absence of a definition of "Company" and because it is reasonable that "Company" mean either the insured company who would obviously know its own vendors or First Continental as it would necessarily need to know who is covered under its Policy, the Court finds "On File with Company" to be ambiguous.

Having found an ambiguity exists, the Court is next charged with construing the ambiguous term in favor of the policyholder and to give purpose to the intent of the parties. Here, there is no genuine issue of fact that the parties to the policy, RPM and First Continental, both interpret the phrase to mean on file with First Continental.  In the affidavit of John R. Hassett, Vice-President of Claims for First Continental, he attests that First Continental intended the phrase "On File with Company" to mean "On File with First Continental."  (Hassett aff. Pg. 4).  Hassett's affidavit outlines the process for adding an Additional Insured under the Vendors Endorsement:

> 15. As mentioned above, Marsh provides FCS with captive insurance management services, including services with respect to the issuance of certificates of insurance to additional insureds under FCS policies. In order for a customer of one of RPM's subsidiaries, such as Euclid, to be covered under the Additional Insured-Vendors Endorsement of the FCS Policy, a request to issue a certificate of insurance showing the customer as an additional insured must be submitted to FCS through Marsh. If it is determined that the customer should be issued a certificate of insurance, Marsh issues a certificate of insurance showing the customer as an additional insured vendor under the FCS Policy. In addition, Marsh adds the name of the customer to the database file which contains, among other things, the names of vendors to whom a certificate of insurance has been issued. Marsh maintains this database on behalf of FCS and RPM.

Likewise, the affidavit of Janeen Kastner, Vice-President of Corporate Benefits and Risk Management of RPM, attests: " RPM, as Named Insured under the Policy, has always interpreted the phrase "On File with Company" to mean that the vendor is "On File" with FCS

through Marsh, its captive insurance manager." (Kastner affidavit pg. 2-3).  Therefore, the parties to the insurance policy both agree the term "On File with Company" means on file with First Continental.   Therefore, there is no dispute of fact that the parties intended the "company" to refer to First Continental and the Court construes it so.

Having determined that "On File with Company" means on file with First Continental, the undisputed evidence demonstrates that Frerk was not on file with First Continental as an Additional Insured under the Vendors Endorement.  (Hassett affidavit pg. 4)( "I have reviewed the list showing the additional insured for Euclid products under the Policy.  Frerk is not on the list.")  Hassett also attaches the list of the additional insureds maintained by Marsh for First Continental and Frerk is not on the list.

In light of the above, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment, finding that Frerk was not an additional insured under the First Continental policy with RPM and Frerk is not entitled to defense or indemnity under the policy.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  September 24, 2015